### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF VIRGINIA
### NORFOLK DIVISION

| | |
|---|---|
| **JAGUAR LAND ROVER LIMITED,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 2:18cv320** |
| **BENTLEY MOTORS LIMITED, and BENTLEY MOTORS, INC.,** | |
| **Defendants.** | |

### MEMORANDUM IN OPPOSITION TO BENTLEY MOTORS LIMITED AND <u>BENTLEY MOTORS, INC.'S MOTION TO STRIKE</u>

## TABLE OF CONTENTS

I.     INTRODUCTION ...........................................................................................1

II.    LEGAL STANDARD.....................................................................................2

III.   ARGUMENT ................................................................................................3

       A.    JLR's Claim Constructions And Expert Declaration Are Timely ..........................3

            1.    JLR Has Not Changed Its Claim Constructions .......................................3

            2.    Bentley Received Sufficient Notice Of Dr. Davis' Opinion.......................4

       B.    Any Delay In Disclosing JLR's Claim Constructions And Expert Declaration Was Justified And/or Harmless ...........................................................5

            1.    Bentley Was Not Surprised And Is Not Prejudiced....................................6

            2.    The Schedule Will Not Be Disrupted .........................................................7

            3.    Dr. Davis' Declaration And Plain Meaning Explanations Are Important..................................................................................................7

            4.    The Timing Of JLR's Disclosures Was Reasonable....................................9

       C.    Exclusion Dr. Davis' Declaration And JLR's Explanation of Plain Meaning Is Unjustified ...........................................................................9

IV.   CONCLUSION............................................................................................10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Acco Brands USA, LLC v. Comarco Wireless Techs., Inc.*,
No. 11-cv-04378, 2013 WL 12173593 (N.D. Cal. Mar. 6, 2013) ............................................8

*BASF Corp. v. Johnson Matthey Inc.*,
875 F.3d 1360 (Fed. Cir. 2017)................................................................................................5

*Belk v. Charlotte–Mecklenburg Bd. of Educ.*,
269 F.3d 305 (4th Cir. 2001) (en banc) .............................................................................3, 10

*Centripetal Networks, Inc. v. Keysight Techs., Inc.*,
No. 2:17-cv-383, Dkt. No. 482 (E.D. Va. Sept. 17, 2018) ......................................................8

*Certain Underwriters at Lloyd's v. AdvanFort Co.*,
No. 1:18-cv-1421, 2019 WL 3366103 (E.D. Va. Jul. 25, 2019)...............................................2

*Kolon Indus. v. E.I. du Pont de Nemours & Co.*,
No. 3:1-1cv-622, 2012 WL 12894840 (E.D. Va. Feb. 23, 2012) ...........................................10

*Magna Donnelly Corp. v. 3M Co.*,
No. 07-cv-10688, 2012 WL 882799 (E.D. Mich. Feb. 24, 2012).............................................3

*Markman v. Westview Instruments, Inc.*,
52 F.3d 967 (Fed. Cir. 1995)................................................................................................7, 8

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
572 U.S. 898 (2014).................................................................................................................5

*Personalized Media Commc'ns, LLC v. Int'l Trade Comm'n*,
161 F.3d 696 (Fed. Cir. 1998)..................................................................................................5

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005)............................................................................................3, 8

*Parthenon Unified Memory Architecture LLC v. HTC Corp.*,
No. 2:14-cv-00690, Dkt. No. 129 (E.D. Tex. Jun. 4, 2015) ....................................................4

*Realtime Data, LLC v. Rackspace US, Inc.*,
No. 6:16-cv-961, Dkt. No. 144 (E.D. Tex. Apr. 17, 2017)......................................................6

*Southern States Rack & Fixture Inc. v. Sherwin-Williams Co.*,
318 F3d 592 (4th Cir. 2003) ................................................................................................2, 5

*Taser Int'l., Inc. v. Stinger Sys.*,
No. 2:09-cv-289, 2012 WL 2953066 (D. Nev. Jul. 19, 2012) ...................................................4

*Tax-Right, LLC v. SICPA Prod. Sec., LLC*,
No. 3:12-cv-657, 2013 WL 3791487 (E.D. Va. Jul. 18, 2013)................................................8

*Tritchler v. Consolidation Coal Co.*,
91 F.3d 134 (4th Cir. 1996) ....................................................................................................2

*Uniloc USA, Inc. v. Autodesk, Inc.*,
No. 2:15-cv-1187, Dkt. No. 60 (E.D. Tex. May 25, 2016)......................................................6

*Wilson v. Volkswagen of Am., Inc.*,
561 F.2d 494 (4th Cir. 1977) ................................................................................................10

**Other Authorities**

L.R. 37(E) ..................................................................................................................................10

## I.    INTRODUCTION

On January 14, 2020, Plaintiff Jaguar Land Rover's ("JLR") Disclosure of Preliminary Proposed Constructions and Identification of Intrinsic and Extrinsic Evidence proposed all five disputed terms be given their "plain meaning." JLR's disclosure also stated that it might rely on Dr. Davis to rebut Bentley's positions, including Bentley's anticipated position that two claim terms are indefinite. On the same day, Bentley served its proposed constructions, asserting that two claim terms were indefinite, and offered an expert declaration in support of its positions. In the following weeks, Bentley never disputed that JLR could serve a responsive expert declaration or suggested that JLR's plain meaning disclosures were deficient.

On February 7, 2020, JLR served its opening claim construction brief and attached a ***responsive*** declaration from Dr. Davis responding to Bentley's expert's declaration and claim construction positions. JLR's brief also explained what JLR understands the "plain meaning" of the disputed terms to be. Again, Bentley said nothing.

The day before responsive claim construction briefs were due, Bentley raised for the first time that it would seek to strike Dr. Davis' responsive declaration and JLR's arguments related to its plain meaning constructions because Bentley had been "prejudiced." Bentley's motion should be denied for three reasons.

First, Bentley was neither prejudiced nor surprised. Dr. Davis' declaration was filed in response to Bentley's positions, just as JLR told Bentley it might do. Indeed, JLR could not have provided a responsive declaration—or even decide whether one was necessary—until seeing Bentley's claim construction brief and supporting expert declaration. Second, Bentley engineered any alleged prejudice it claims to have suffered by waiting until after the claim construction process was complete before raising the issues in its motion. Bentley could have sought to depose Dr. Davis or filed a responsive expert declaration with its reply brief. It did not, preferring to claim

prejudice to support its motion to strike.  Third, JLR merely explained what it understands the "plain meaning" of the disputed terms to be so as to avoid any misunderstanding or dispute about the plain meaning of those terms.  That cannot be a surprise and is certainly not prejudicial. Bentley was well aware of JLR's plain meaning application of the terms not only from JLR's Disclosure of Preliminary Proposed Constructions, but also from JLR's detailed infringement contentions served on October 1, 2019.  And Bentley was able to—and did—fully respond to all of JLR's arguments in its responsive brief.

In short, Bentley's arguments ring hollow and its motion to strike should be rejected.

## II.   LEGAL STANDARD

Striking evidence and argument due to an alleged untimely disclosure is a drastic sanction. For this very reason, motions to strike are disfavored and rarely granted.  *See Tritchler v. Consolidation Coal Co.*, 91 F.3d 134, 134 (4th Cir. 1996) (explaining that exclusion "is considered a drastic remedy, and it is [generally] not imposed unless the party's conduct is in bad faith or callous disregard of the discovery rules").  Therefore, before deciding a motion to strike, courts consider several factors to determine if the lack of compliance was "harmless" or "substantially justified," and whether exclusion of evidence is appropriate due to the failure to comply.  *Certain Underwriters at Lloyd's v. AdvanFort Co.*, No. 1:18-cv-1421, 2019 WL 3366103, at *4  (E.D. Va. Jul. 25, 2019).

First, courts consider the following five factors to determine whether the lack of compliance was "harmless" or "substantially justified": "(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the non-disclosing explanation for its failure to disclose the evidence." *Southern States Rack & Fixture Inc. v. Sherwin-Williams Co.*, 318 F3d 592, 597 (4th Cir. 2003); *id.* at 596 (equating

prejudice with ability to cure).  These factors support that, to the extent JLR should have disclosed Dr. Davis' opinions and its plain meaning explanations earlier, its failure to do so was substantially justified and/or harmless.

Moreover, even if (and only if) the Court finds that JLR's failure to disclose earlier was unjustified and/or not harmless, the Court should consider four factors to assess whether the requested remedy for non-compliance is appropriate: "(1) whether the non-complying party acted in bad faith, (2) the amount of prejudice that noncompliance caused the adversary, (3) the need for deterrence of the particular sort of non-compliance, and (4) whether less drastic sanctions would have been effective." *Belk v. Charlotte–Mecklenburg Bd. of Educ.*, 269 F.3d 305, 348 (4th Cir. 2001) (en banc).  Here, these factors clearly weigh against striking Dr. Davis' declaration.

## III.   ARGUMENT

### A.   JLR's Claim Constructions And Expert Declaration Are Timely

#### 1.   JLR Has Not Changed Its Claim Constructions

Bentley argues that JLR improperly expanded its proposed claim construction of plain meaning by proposing alternative constructions.  This argument fails because it rests on Bentley's erroneous contention that JLR's claim constructions have changed.  They have not.

In its Disclosure of Preliminary Proposed Constructions, JLR proposed plain meaning for all five disputed claim terms.  *See* Ex. 1.  In its opening brief, JLR maintained that each of the terms should be given their plain meaning in light of the intrinsic and extrinsic evidence, and explained what that meant.  *See* Dkt. No. 247; *Magna Donnelly Corp. v. 3M Co.*, No. 07-cv-10688, 2012 WL 882799, at *7 (E.D. Mich. Feb. 24, 2012), *R&R adopted*, No. 07-cv-10688, 2012 WL 858628 (E.D. Mich. Mar. 14, 2012) ("[I]n many cases it would be helpful for a Court to have in hand examples of "plain and ordinary" meaning to make the determination of whether a claim term requires construction"); *see also Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005)

("Because the meaning of a claim term as understood by persons of skill in the art is often not immediately apparent, and because patentees frequently use terms idiosyncratically, the court looks to those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean."). Therefore, JLR provided an explanation of what "plain and ordinary" means in the context of the asserted patent. Because JLR continues to assert that all the disputed claim terms should be given their "plain and ordinary" meaning, JLR's proposed constructions were timely disclosed.

### 2. Bentley Received Sufficient Notice Of Dr. Davis' Opinion

Bentley contends that JLR failed to timely disclose the possibility of Dr. Davis' declaration. This is false. In its Disclosure of Preliminary Proposed Constructions, JLR stated that Dr. Davis may testify in support of its claim construction positions. *See* Ex 1. JLR did not expect that the parties would need to rely upon expert testimony to resolve the claim construction disputes, given that the Court need only consider the intrinsic record to understand the meaning of the claim terms, but still identified Dr. Davis in case Bentley used an expert witness. *See Phillips*, 415 F.3d at 1317-18 (explaining that the intrinsic evidence takes priority over extrinsic evidence (e.g., dictionaries, treatises, expert testimony), as the extrinsic record is "less reliable"); *see also Parthenon Unified Memory Architecture LLC v. HTC Corp.*, No. 2:14-cv-00690, Dkt. No. 129 at 2 (E.D. Tex. Jun. 4, 2015) ("This Court expects diligence and reasonable foresight in identifying extrinsic evidence, but cannot expect clairvoyance.").

Moreover, Bentley ignores that Dr. Davis' opinion is ***responsive*** to Bentley's expert's opinion, so JLR could not have disclosed it until ***after*** receiving Bentley's expert's declaration. When Bentley served its expert's declaration, JLR reviewed it and served a responsive declaration from Dr. Davis to rebut Bentley's expert. This is plainly proper. *See Taser Int'l, Inc. v. Stinger Sys.*, No. 2:09-cv-289, 2012 WL 2953066, at *2 (D. Nev. Jul. 19, 2012) (denying motion to strike

expert declaration that patentee offered for purposes of the claim construction hearing and in rebuttal to the accused infringer's proffered expert testimony).

Bentley attempts to dismiss this explanation, arguing that JLR knew Bentley's general theory of indefiniteness before the claim construction process and thus should have filed an anticipatory declaration. But that turns the burden of proof on its head. A patentee does not have an affirmative obligation to prove a claim "inform[s] those skilled in the art about the scope of the invention with reasonable certainty," let alone use expert testimony to do it. *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 910 (2014). Rather, it is Bentley, as the challenger, that "ha[s] the burden of proving indefiniteness by clear and convincing evidence." *BASF Corp. v. Johnson Matthey Inc.*, 875 F.3d 1360, 1365 (Fed. Cir. 2017).

Moreover, JLR could not be sure that Bentley would rely on an expert declaration because, as the Federal Circuit has made clear, such extrinsic evidence "may not be relied upon during claim construction when the intrinsic evidence unambiguously defines the [allegedly indefinite] claim." *Personalized Media Commc'ns, LLC v. Int'l Trade Comm'n*, 161 F.3d 696, 706 (Fed. Cir. 1998). Here, the intrinsic evidence unambiguously defines "suitable" and "a relatively high degree of wheel slip under braking"—the two terms in dispute—and thus JLR could neither anticipate what Bentley's expert declaration might say nor respond to it until after it was served.

### B.     Any Delay In Disclosing JLR's Claim Constructions And Expert Declaration Was Justified And/Or Harmless

To the extent JLR should have disclosed Dr. Davis' opinions and its plain meaning explanations sooner, the five *Southern States* factors—surprise, prejudice, disruption of the trial, importance of the evidence, and JLR's explanation for the timing of its disclosure—demonstrate that the timing of JLR's disclosures was justified and/or harmless.

### 1. Bentley Was Not Surprised And Is Not Prejudiced

Bentley cursorily argues that it was surprised and nothing can remedy this surprise except exclusion. Dkt. No. 268 at 6-8. But the only prejudice Bentley claims to have suffered is a lack of time to consider JLR's arguments and evidence. Dkt. No. 268 at 7. Bentley, however, had ample opportunity to respond to JLR's claim construction arguments and Dr. Davis' declaration. Indeed, in Bentley's reply claim construction brief, Bentley disputes the usefulness of JLR's explanations of plain meaning for the terms "driving surface," "off-road," and "vehicle subsystem," and the relevance of Dr. Davis' declaration. *See* Dkt. No. 266 at 7, 10-13, 19-20, 22, 23. *Uniloc USA, Inc. v. Autodesk, Inc.,* No. 2:15-cv-1187, Dkt. No. 60 (E.D. Tex. May 25, 2016) (denying motion to strike claim construction expert declaration because the movant failed to show prejudice). Bentley goes further with Dr. Davis' declaration, stating flatly that it "does nothing to undermine Bentley's argument that the 'suitable' and 'relatively high degree' claim terms are indefinite." Dkt. No. 268 at 10.

And even if Bentley was somehow surprised by JLR's explanations of the plain meaning of the disputed terms and Dr. Davis' declaration, the time to raise it was before the parties' reply claim construction briefs, not after the briefing was complete. But Bentley was silent for a week after receiving Dr. Davis' declaration and JLR's opening brief, waiting until the day before reply briefs were due before saying a word. "[D]efendant cannot lay behind the log until late in the case and then claim it lacks notice." *Realtime Data, LLC v. Rackspace US, Inc.*, No. 6:16-cv-961, Dkt. No. 144 at 3 (E.D. Tex. Apr. 17, 2017) (denying motion to strike expert declaration submitted in conjunction with opening claim construction brief where party had ample opportunity to challenge disclosures but chose not to take them). Bentley attempts to excuse its delay in raising its objections by implying that the Court would have denied an extension of briefing. Dkt. No. 268 at 8. But by never asking for an extension, Bentley assured that it would not receive it. *See*

6

*Southern States Rack & Fixture, Inc.*, 318 F.3d at 596 ("[The] focus of a preclusion inquiry is mainly upon surprise and prejudice, including the opponent's ability to palliate the ill effects stemming from the late disclosure."). Thus, any alleged prejudice was self-imposed and does not support striking Dr. Davis' declaration.

### 2.     The Schedule Will Not Be Disrupted

Bentley insists that the schedule must necessarily be extended to provide Bentley sufficient time to prepare for JLR's expert witness, Dr. Davis, attending the *Markman* hearing. Dkt. No. 268 at 8. But the time to disclose whether the expert will actually testify is not with the initial preliminary construction proposals. And it is not during the parties' briefing. Instead, the parties disclose whether there will be expert testimony at the *Markman* hearing in their joint claim construction statement. Dkt. No. 55 at 5-6 ("The parties must identify . . . each proposed witness at the claim-construction hearing" in the joint claim construction statement). In other words, the parties are in the exact same position with respect to expert testimony at the *Markman* hearing.

### 3.     Dr. Davis' Declaration And Plain Meaning Explanations Are Important

Bentley tries to downplay the importance of Dr. Davis' declaration and for good reason. Dkt. No. 268 at 10-11. Dr. Davis' declaration rebuts Bentley's flawed claim construction positions—in particular, Bentley's contention that the terms "suitable" and "relatively high" are indefinite. *See* Dkt. No. 246-7 (G. Davis Decl.) at ¶¶ 26-54. Specifically, Dr. Davis explains why one skilled in the art would understand the scope of the terms "suitable" and "relatively high." Dkt. No. 246-7 (G. Davis Decl.) at ¶¶ 34-54. He also explains why Bentley's construction of "off-road" is incorrect. Dkt. No. 246-7 (G. Davis Decl.) at ¶¶ 26-33. "The case law is clear that the court may 'receive extrinsic evidence in order to aid the court in coming to a correct conclusion as to the true meaning of the language employed in the patent.'" *Centripetal Networks, Inc. v.*

*Keysight Techs., Inc.*, No. 2:17-cv-383, Dkt. No. 482 at 11 (E.D. Va. Sept. 17, 2018) (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 980 (Fed. Cir. 1995)).  For this reason alone, Dr. Davis' declaration should not be struck.  *Centripetal Networks, Inc.*, Dkt. No. 482 at 10-11 (denying motion to strike expert declaration submitted in conjunction with opening claim construction brief).  Accordingly, to the extent the Court considers extrinsic evidence to resolve construe the claim terms, it should consider Dr. Davis' declaration.

Bentley also argues (contradicting its prejudice arguments) that Dr. Davis' declaration should be struck because it "lacks probative value."  Dkt. No. 268 at 10.  While Bentley is wrong, even if there was a dispute about the "probative value" of Dr. Davis' declaration, that just goes to its weight, not whether it should be included in the record.  *See Acco Brands USA, LLC v. Comarco Wireless Techs., Inc.*, No. 11-cv-04378, 2013 WL 12173593, at *2 (N.D. Cal. Mar. 6, 2013) (denying motion to strike expert declaration because argument that extrinsic evidence may not be used to contradict intrinsic evidence "is an argument that goes to the weight of the evidence, rather than the question of whether it may be presented at all." (citing *Phillips*, 415 F.3d at 1318)); *Tax-Right, LLC v. SICPA Prod. Sec., LLC*, No. 3:12-cv-657, 2013 WL 3791487, at *3 (E.D. Va. Jul. 18, 2013) (denying motion to strike inventor declaration in support of claim construction because "[i]t may be that the Court need not consider extrinsic evidence; it may be that [the] testimony is unpersuasive. However, those are questions of weight and not admissibility.").  Because Dr. Davis' declaration provides insight into how one of ordinary skill would understand the disputed claim terms, the Court should deny Bentley's motion.

Bentley raises the same arguments with respect to JLR's plain meaning explanations.  But as detailed above, it is useful to understand the "plain meaning" of the disputed terms to avoid any misunderstanding or dispute about the plain meaning of those terms.  *See infra* at 3-4.  And while

Bentley may disagree as to the value of such explanations to the Court, this just goes to the weight of it—it does not determine admissibility.

### 4.     The Timing Of JLR's Disclosures Was Reasonable

Lastly, Bentley argues that JLR can offer no explanation for the timing of its disclosures. Dkt. No. 268 at 9-10.  But again this ignores the nature of Dr. Davis' declaration and JLR's explanation of plain meanings, as explained at length above.  The Court's schedule requires that the parties disclose their proposed constructions and identify any evidence known to the party in their preliminary claim construction disclosures.  Dkt. No. 55.  JLR did that.  Because Dr. Davis' opinion is responsive to Bentley's claim construction positions, JLR could not have disclosed it any sooner.  Likewise, JLR's explanations of plain meaning are just that—JLR's understanding of what plain meaning is.  Because JLR disclosed its responsive evidence and arguments as soon as it could, the timing of JLR's disclosures was reasonable.

### C.     Exclusion of Dr. Davis' Declaration And JLR's Explanation of Plain Meaning Is Unjustified

Even if (and only if) the Court finds that JLR's failure to disclose Dr. Davis' opinions and plain meaning explanations earlier was unjustified and/or not harmless, the record does not support striking this evidence and arguments for three reasons.  First, as explained above, Bentley is not prejudiced.  *See infra* at 6-7.

Second, JLR did not act in bad faith.  To argue otherwise, Bentley implies that JLR engaged in improper gamesmanship because JLR requested to extend the deadline to submit opening claim construction briefs twice.  Bentley misstates the record to deflect from its own conduct.  Bentley requested the first extension.  *See* Ex. 2 (R. Colletti 1.17.20 Email).  And both parties agreed to the extensions as both parties would benefit from additional time, in light of the close of fact discovery.  *See* Dkt. Nos. 189, 266.

Third, as detailed above, Bentley's own conduct ensured that Bentley could not receive alternative relief, such as additional time before filing its reply claim construction brief. *See infra* at 6-7.

Simply put, JLR did not act in bad faith, Bentley has not been prejudiced, and Bentley's own conduct precluded any alternative relief.[1]  Thus, none of the contested *Belk* factors favor excluding JLR's declaration and plain meaning explanations. *See Wilson v. Volkswagen of Am., Inc.*, 561 F.2d 494, 503 (4th Cir. 1977) (A court's discretion "is not, however, a discretion without bounds or limits but one to be exercised discreetly and never when it has been established that failure to comply has been due to inability, and not to willfulness, bad faith, or any fault of (the non-complying party).")  Accordingly, the Court should deny Bentley's motion.

## IV.  CONCLUSION

For the foregoing reasons, the Court should deny Bentley's motion to strike in its entirety, including Bentley's request for fees and costs.

Dated: March 3, 2020

Robert A. Angle (VSB No. 37691)
Laura Anne Kuykendall (VSB No. 82318)
TROUTMAN SANDERS LLP
1001 Haxall Point
Richmond, Virginia 23219
Telephone: (804) 697-1200
Facsimile: (804) 697-1339
robert.angle@troutman.com
la.kuykendall@troutman.com

Respectfully submitted,

*/s/ Laura Anne Kuykendall*
Bert C. Reiser (VA Bar No. 31856)
bert.reiser@lw.com
Matthew A. Moore (*pro hac vice*)
matthew.moore@lw.com
Diane E. Ghrist (*pro hac vice*)
diane.ghrist@lw.com
Will Orlady (*pro hac vice*)
will.orlady@lw.com
LATHAM & WATKINS LLP

---

[1]  In addition, it is worth noting that Bentley did not properly meet and confer with JLR before it filed its motion to strike, as required by the local rules. *See* Ex. 3 (2.19.20 Email Exchange); L.R. 37(E).  This calls into question Bentley's own good faith and provides an independent basis for denying Bentley's motion. *See, e.g., Kolon Indus. v. E.I. du Pont de Nemours & Co.*, No. 3:11-cv-622, 2012 WL 12894840, at *3 (E.D. Va. Feb. 23, 2012) (denying a motion to compel based on a violation of rule 37(E)'s meet and confer).

Kathleen M. Knudsen (VSB No. 90845)
TROUTMAN SANDERS LLP
222 Central Park Ave., Suite 2000
Virginia Beach, VA 23462
Telephone: (757) 687-7759
Facsimile: (757) 687-7510
kathleen.knudsen@troutman.com

555 11th St. NW, Suite 1000
Washington, DC 20004
Telephone: (202) 637-2200
Facsimile: (202) 637-2201

Clement J. Naples (*pro hac vice*)
clement.naples@lw.com
LATHAM & WATKINS LLP
885 Third Avenue
New York, NY 10022
Telephone: (212) 906-1200
Facsimile: (212) 751-4864

Christopher W. Henry (*pro hac vice*)
christopher.henry@lw.com
LATHAM & WATKINS LLP
200 Clarendon Street
Boston, MA 02116
Telephone: (617) 948-6000
Facsimile: (617) 948-6001

Gabrielle LaHatte (*pro hac vice*)
gabrielle.lahatte@lw.com
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538
Telephone: (415) 395-8108
Facsimile: (415) 395-8095

*Attorneys for Plaintiff*
*Jaguar Land Rover Limited*